**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>   *Plaintiffs*,<br><br> v.<br><br>NATIONAL SECURITY AGENCY, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, DEPARTMENT OF JUSTICE, and CENTRAL INTELLIGENCE AGENCY,<br><br>   *Defendants*. | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Case No.__1:16-cv-8936__<br><br>Hon._____ |

Patrick Toomey
Ashley Gorski
Hina Shamsi
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

November 17, 2016

## COMPLAINT FOR INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (together, the "ACLU") seek the immediate processing and timely release of agency records from Defendants National Security Agency ("NSA"), Office of the Director of National Intelligence ("ODNI"), U.S. Department of Justice ("DOJ"), and Central Intelligence Agency ("CIA").

2.      On September 14, 2016, Plaintiffs submitted a FOIA request (the "Request") to NSA, ODNI, DOJ, and CIA seeking records related to Section 702 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881a. The Request seeks information concerning the scope of the government's warrantless surveillance programs operated under Section 702, as well as related records showing how this surveillance affects Americans.

3.      To date, none of the Defendants has released any responsive record.

4.      The failure of Defendants to identify and release responsive records is of particular concern because the Request relates to a sweeping surveillance authority that implicates core privacy and free speech rights of Americans.

5.      The government relies on Section 702 to engage in the warrantless surveillance of Americans' international communications. This authority is set to expire in 2017, and Congress has already begun holding hearings about whether it should be reauthorized. However, the public still lacks essential information about the breadth of surveillance under Section 702, the ways in which this surveillance is used, and its impact on American citizens and residents. Timely disclosure of these records is critical to the ongoing public debate about the lawfulness of

1

Section 702. Without additional information, the public will be unable to engage in an informed debate concerning Section 702's potential reauthorization.

6. Plaintiffs now ask the Court for an injunction requiring NSA, ODNI, DOJ, and CIA to process the Request immediately. Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

8. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9. Plaintiff American Civil Liberties Union is a nationwide non-profit and non-partisan 501(c)(4) organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to ensuring that the United States government complies with the Constitution and laws of this country, including its international legal obligations, in matters that affect civil liberties and human rights. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities. The American Civil

2

Liberties Union is incorporated in New York State and has its principal place of business in New York City.

10.     Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and has its principal place of business in New York City.

11.     Defendant NSA is an intelligence agency established within the executive branch of the U.S. government and administered through the Department of Defense. The NSA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

12.     Defendant ODNI is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

13.     Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Federal Bureau of Investigation ("FBI"), the National Security Division ("NSD"), the Office of Information Policy ("OIP"), the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of the Inspector General ("OIG"), from which the ACLU has requested records, are components of DOJ.

14.     Defendant CIA is an intelligence agency established within the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL BACKGROUND

### Section 702 of FISA

15.     Congress enacted Section 702 as part of the FISA Amendments Act of 2008 ("FAA"), giving the government broad authority to monitor Americans' international communications without a warrant. *See* 50 U.S.C. § 1881a.

16.     While Section 702 surveillance is ostensibly "targeted" at foreigners located overseas, the government uses this authority to acquire the phone calls, emails, and other internet communications of Americans who are in contact with its foreign targets.

17.     For example, the government may collect Americans' communications when a U.S. person communicates with family members, friends, business associates, or other contacts abroad whom the government has targeted under Section 702. The government may also collect Americans' communications when it mistakenly targets a U.S. person for surveillance.

18.     The government implements Section 702 through at least two programs: the "PRISM" and "Upstream" programs.

19.     Using PRISM surveillance, the government compels electronic communications providers—like Apple, Facebook, and Microsoft—to furnish communications sent to or from a target's account, such as an email account used by a non-U.S. person located overseas.

20.     Through Upstream surveillance, the government intercepts international telephone calls and internet communications as they are routed across major communications networks inside the United States. With respect to internet communications, the government compels providers—like AT&T and Verizon—to search the contents of international traffic in bulk for communications that are to, from, or about the NSA's targets.

4

21.     Judicial review of Section 702 surveillance is narrowly circumscribed. Once a year, the government presents a set of certifications to the Foreign Intelligence Surveillance Court ("FISC"), describing at a high level of generality the surveillance the government intends to conduct. Those certifications do not identify the government's individual targets, nor do they specify the various places and facilities at which its surveillance will be directed. *See* 50 U.S.C. §§ 1881a(a), 1881a(g).

22.     Section 702 surveillance is not predicated on an individualized determination of probable cause or on any suspicion of wrongdoing. More broadly, the FISC does not approve, supervise, or review the government's interception of individual Americans' communications.

23.     The statute's safeguards are limited to the requirement that each agency adopt "targeting" and "minimization" procedures, which must be "reasonably designed . . . to minimize the acquisition and retention, and prohibit the dissemination" of U.S. person information. 50 U.S.C. § 1881a(e); *id.* § 1801(h)(1). These procedures, however, grant the government wide latitude to seize, search, analyze, and use the communications of Americans.

24.     Surveillance under Section 702 is conducted on an immense scale: in 2015 alone, the government relied on Section 702 to obtain the communications of 94,368 targets under a single court order.

25.     The public, however, still lacks basic information about the breadth of Section 702 surveillance and the policies and procedures that apply to this surveillance. The government has not disclosed, for example, the number of communications involving Americans that are subject to Section 702 surveillance. Nor has the government disclosed many of the rules that set the bounds of this surveillance today, including its current targeting procedures, its current

minimization procedures, and its complete sets of rules for using Section 702 to investigate or prosecute individual Americans.

26.    Section 702 is scheduled to expire in 2017, and Congress has already begun to hold hearings about whether to reauthorize this warrantless surveillance authority.

27.    Because disclosures to date leave significant gaps in the public's understanding of Section 702 surveillance, release of the requested records will provide crucial information about how Section 702 is being used by the government and what safeguards exist to protect Americans' privacy.

### The FOIA Request

28.    On September 14, 2016, the ACLU submitted identical FOIA Requests to NSA, ODNI, DOJ (and its components the FBI, NSD, OIP, Office of the Attorney General, Office of the Deputy Attorney General, and OIG), and CIA seeking:

(1) Section 702 targeting and minimization procedures, or amendments thereto, submitted to the FISC on or after January 1, 2015, including the procedures identified, described, or excerpted in the FISC Memorandum Opinion and Order dated November 6, 2015.

(2) Section 702 certifications and any related filings, memoranda, affidavits, or attachments submitted to the FISC on or after January 1, 2015.

(3) The "Summary of Notable Section 702 Requirements" submitted to the FISC, and all documents referenced in or submitted with that summary.

(4) Policies, procedures, or guidance addressing the querying, review, or use of information acquired under Section 702 in investigations, legal proceedings, or administrative actions against United States persons. This request includes, but is not limited to:

(a) The policy described by ODNI General Counsel Robert Litt in remarks delivered on February 4, 2015. This request seeks the full records reflecting that policy, and any modification of it, not merely those portions of the records that have already been publicly released.

6

(b) The three sets of NSA procedures addressing the use of U.S. person identifiers for queries of communications collected under Section 702, as described in the NSA OIG report dated February 20, 2015.

(5) Amicus briefs submitted to the FISC or FISCR addressing Section 702 surveillance, including but not limited to the brief(s) filed by amicus curiae Amy Jeffress pursuant to FISC orders dated August 13 and September 16, 2015.

(6) Formal or informal FISC submissions by the government addressing Section 702 surveillance and the government's discovery, *Brady*, or preservation obligations.

(7) Estimates, charts, studies, or other records reflecting the number of communications filtered, screened, searched, acquired, collected, or retained using Section 702 surveillance for any period beginning on or after January 1, 2013. This request includes estimates that pertain to particular subsets of communications—for instance, those collected via PRISM or Upstream; communications to or from U.S. persons; wholly domestic communications; "about" communications; or multi-communication transactions ("MCTs").

(8) Inspector General reports addressing Section 702 surveillance that are dated on or after January 1, 2013, and have not previously been publicly released, including but not limited to the NSA Office of the Inspector General report dated October 29, 2013.

(9) The following policies, procedures, and guidance addressing Section 702 surveillance:

(a) The most recent version of the Attorney General guidelines mandated by 50 U.S.C. § 1881a(f).

(b) The FBI Standard Minimization Procedures Policy Implementation Guidelines dated October 31, 2008, or the most recent superseding version of those procedures.

(c) The "NSA internal procedures" referenced or described in the Report to the Intelligence Oversight Board on NSA Activities dated March 4, 2013.

(d) The most recent version of the NSA Standard Operating Procedures for oversight, adjudication, and targeting FAA § 702 functions and training.

(e) The most recent version of the NSA Guidance to Analysts on Obligation to Review Data Under Protect America Act and the FISA Amendments Act.

7

(f) The most recent version of the NSA "FAA 702 Curriculum," including the training courses titled "FISA Amendments Act (FAA) 702" (also known as "OVSC1203"), "FAA 702 Practical Applications," "FAA 702 Adjudicator Training," and "FAA 702 Targeting Adjudication."

29.    Plaintiffs sought expedited processing of the Request on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 522(a)(6)(E).

30.    Plaintiffs sought a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

31.    Plaintiffs also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id*. § 552(a)(4)(A)(ii).

## Defendants' Responses to the Request

32.    Despite the urgent public interest surrounding the requested documents, none of the Defendants has released any record in response to the Request. Some of the Defendants have granted the ACLU's requests for expedited processing and waiver of fees, while others have denied those same requests.

33.    Under the statute, Defendants have twenty working days to respond to a request. *See* 5 U.S.C. § 552(a)(6)(A)(i). If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. More than 30 working days have passed since Plaintiffs filed the Request. Thus, these time periods have elapsed.

NSA

34.     By letter dated September 23, 2016, the NSA acknowledged receipt of the Request and assigned it reference number 85461. The NSA denied Plaintiffs' request for expedited processing and their request for a fee waiver. The NSA further denied Plaintiffs' request that Plaintiffs be placed in the "media" fee category, and instead placed Plaintiffs in the "all other" fee category.

35.     On October 28, 2016, Plaintiffs timely filed by mail an administrative appeal from the NSA's denial of the request for expedited processing, the denial of the request for a fee waiver, and the placement of Plaintiffs in the "all other" fee category. NSA received the appeal on October 31, 2016. Plaintiffs' administrative appeal remains pending.

36.     To date, NSA has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the NSA has failed to comply with the time limit for responding to the Request under FOIA.

37.     NSA continues to wrongfully withhold the requested records from Plaintiffs.

Office of the Director of National Intelligence

38.     By letter dated September 20, 2016, ODNI acknowledged receipt of the Request and assigned it reference number DF-2016-00314. ODNI denied Plaintiffs' request for expedited processing and granted their request for a fee waiver.

39.     To date, ODNI has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because ODNI has failed to comply with the time limit for responding to the Request under FOIA.

40.     ODNI continues to wrongfully withhold the requested records from Plaintiffs.

9

Department of Justice

*Federal Bureau of Investigation*

41.     By email dated September 14, 2016, the FBI acknowledged receipt of the Request and stated that the requests for expedited processing and waiver of fees would be addressed after the Request had been assigned a case number.

42.     By letter dated September 21, 2016, the FBI assigned the Request FOIPA Request No. 1358220-000. The FBI indicated that it was "searching the indices to [the] Central Records System for the information responsive to this request." The FBI also informed Plaintiffs that the request for a fee waiver was under consideration, and that if that request were denied, Plaintiffs would be charged applicable duplication fees "[a]s an educational institution, noncommercial scientific institution or representative of the news media requester," in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II).

43.     By letter dated September 30, 2016, the FBI granted Plaintiffs' request for expedited processing.

44.     To date, the FBI has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the FBI has failed to comply with the time limit for responding to the Request under FOIA.

45.     The FBI continues to wrongfully withhold the requested records from Plaintiffs.

*National Security Division*

46.     By email dated October 4, 2016, NSD acknowledged receipt of the Request and assigned it reference number FOIA/PA #16-226. NSD granted Plaintiffs' request for expedited processing and stated that the fee waiver request was under consideration.

10

47.     To date, NSD has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because NSD has failed to comply with the time limit for responding to the Request under FOIA.

48.     NSD continues to wrongfully withhold the requested records from Plaintiffs.

*Office of Information Policy, Office of the Attorney General,
and Office of the Deputy Attorney General*

49.     By two emails dated September 22, 2016, the OIP acknowledged receipt of the Request and assigned it two reference numbers: DOJ-2016-005518 (Office of the Attorney General) and DOJ-2016-005536 (Office of the Deputy Attorney General).

50.     By letter dated September 23, 2016, OIP, responding on behalf of the Offices of the Attorney General and Deputy Attorney General, granted the request for expedited processing and deferred consideration of the request for a fee waiver. The letter stated that the Request had been assigned to a Government Information Specialist in the Office of Information Policy and that records searches had been initiated in the Offices of the Attorney General and Deputy Attorney General.

51.     In the same letter, OIP advised Plaintiffs that "unusual circumstances" would impact the time required to process the Request, and that the office would need more than the ten additional days provided by the statute to respond.

52.     To date, OIP, the Office of the Attorney General, and the Office of the Deputy Attorney General have neither released responsive records nor explained their failure to do so. Plaintiffs have exhausted all administrative remedies because OIP, the Office of the Attorney General, and the Office of the Deputy Attorney General have failed to comply with the time limit for responding to the Request under FOIA

11

53.     OIP, the Office of the Attorney General, and the Office of the Deputy Attorney General continue to wrongfully withhold the requested records from Plaintiffs.

*Office of the Inspector General*

54.     By letter dated September 30, 2016, OIG acknowledged receipt of the Request and assigned it control number 16-OIG-289. The letter did not address the request for expedited processing or the request for a fee waiver.

55.     By letter dated October 24, 2016, OIG responded to the Request, reporting that it had located no responsive documents.

56.     On November 14, 2016, Plaintiffs timely filed by mail an administrative appeal challenging the adequacy of OIG's search. In addition, to the extent that OIG relied upon the FOIA exclusions in 5 U.S.C. § 552(c) as a basis for withholding responsive documents, Plaintiffs challenged those withholdings. In light of these deficiencies, Plaintiffs requested that OIG be required to conduct a renewed search for the records described in the Request and that OIG be required to release any responsive records wrongfully excluded and withheld on the basis of 5 U.S.C. § 552(c). DOJ received the appeal on November 15, 2016.

57.     To date, OIG has not released responsive records nor has DOJ responded to Plaintiffs' administrative appeal.

58.     OIG continues to wrongfully withhold the requested records from Plaintiffs.

Central Intelligence Agency

59.     By letter dated September 16, 2016, the CIA acknowledged receipt of the Request and assigned it reference number F-2016-02561. The CIA denied Plaintiffs' request for expedited processing and granted their request for a fee waiver.

60.     To date, CIA has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the CIA has failed to comply with the time limit for responding to the Request under FOIA.

61.     CIA continues to wrongfully withhold the requested records from Plaintiffs.

## CAUSES OF ACTION

62.     Defendants' failure to make a reasonable effort to search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

63.     Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendants' corresponding regulations.

64.     Defendants' failure to process Plaintiffs' request expeditiously and as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

65.     Defendants' failure to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

66.     Defendants' failure to grant Plaintiffs' request for a limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Order Defendants to conduct a thorough search for all responsive records;

B.     Order Defendants to immediately process and release any responsive records;

C.     Enjoin Defendants from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

D.    Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action;

and

E.    Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Patrick Toomey
Ashley Gorski
Hina Shamsi
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

November 17, 2016